LAWRENCE MAXWELL ET AL., EXECUTORS, &c., PROSE-CUTORS, v. EDWARD I. EDWARDS, COMPTROLLER OF THE TREASURY OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.

Argued June 6, 1916—Decided November 29, 1916.

1. The Inheritance Tax law (*Pamph. L.* 1909, *p.* 325), as amended (*Pamph. L.* 1914, *p.* 267), is a succession and not a property tax, and does not violate any provision of the federal or state constitutions intended to secure equality of rights.

2. The act of April 9th, 1914 (*Pamph. L., p.* 267), amending the Inheritance Tax law (*Pamph. L.* 1909, *p.* 325), if discriminatory at all, discriminates when considered with cognate legislation in favor of the non-resident, and, although it does not produce absolute equality, it is a workable rule, and a step in the evolution making for practical equality of taxation in so far as such equality can be evolved under our dual system of government, and is therefore valid.

On writ of *certiorari* removing state tax.

Before Justices SWAYZE, MINTURN and KALISCH.

For the prosecutor, *Coult & Smith,* and *Edward DeWitt,* of New York.

For the state, *John W. Wescott,* attorney-general, and *John R. Hardin.*

The opinion of the court was delivered by

MINTURN, J. The writ is intended to review an assessment of a transfer tax, imposed by the state comptroller, upon

certain personalty in this state, of which James McDonald, a non-resident, died possessed.

The property in question consists of certain stocks in the Standard Oil Company, and in six other New Jersey corporations, valued in the aggregate at $1,114,965. The deceased died in the District of Columbia, leaving a last will and testament, and a codicil, which were duly admitted to probate, and letters testamentary granted thereon in that district to Lawrence Maxwell of Ohio, and the Fulton Trust Company of New York, a corporation organized under the laws of that state, who have qualified as executors. The beneficiaries named in the will were at the time of testator's death non-residents of this state. The total amount of the state tax imposed was $29,071.68, the legality of which assessment is the subject of this litigation.

The tax was imposed in pursuance of chapter 228 of the laws of 1909, as amended by chapter 151 of the laws of 1914. A subsequent amendment was passed in 1915 (*Pamph. L., p.* 745), but was not effective or in operation at the time of the death of the testator, and therefore has no bearing upon this issue.

The act of 1909 was the original act dealing with the subject-matter of this contest, and presents in its title a clear statement of the legislative intent, "An act to tax the transfer of property of resident and non-resident decedents, by devise, bequest, descent, distribution by statute, gift, deed, grant, bargain and sale in certain cases."

It is insisted that in imposing the tax the decisions of the New York courts construing a statute substantially similar in verbiage to the act in question, should have been followed by the comptroller. This contention, however, has been dealt with by this court in Hopper *v.* Edwards, in an opinion by Mr. Justice Trenchard, and quite recently in Torrance *v.* Edwards, in an opinion by Mr. Justice Kalisch, both adjudications being adverse to the claim urged here. That question therefore may be disposed of upon the doctrine of *stare decisis.*

The effect of the legislation under consideration has been determined by this court, and the Court of Errors and Appeals

in a series of cases in which its legality was attacked from various aspects, with the result of sustaining it as a legislative effort to impose a succession as contradistinguished from a property tax. It is further deducible from these decisions that this legislative power, when not exerted in an arbitrary or capricious manner, or in disregard of fundamental rights, does not contravene any inhibition intended to secure equality of rights contained in the provisions of the federal or state constitutions. *Neilson* v. *Russell,* 76 *N. J. L.* 27; *S. C.* (*Court of Errors and Appeals*), *Id.* 655; *Sawter* v. *Shoenthal,* 83 *Id.* 499; *Carr* v. *Edwards,* 84 *Id.* 667; *Beers* v. *Edwards, Id.* 32; *Senff* v. *Edwards,* 85 *Id.* 67; *Hopper* v. *Edwards,* 88 *Id.* 471; *Howell* v. *Edwards, Id.* 134.

The inquiry presented by this controversy is not any criticism of these fundamentals, but resolves itself entirely into a criticism of the legal effect of the amendment of 1914, in its effort to reach the estates of non-resident decedents, by the method provided in section 20 of the act, which is as follows: "A tax shall be assessed on the transfer of property in this state of a non-resident decedent, if all or any part of the estate of such decedent wherever situated shall pass to persons or corporations taxable under this act, which tax shall bear the same ratio to the entire tax, as the said estate would have been subject to under this act, if such non-resident decedent had been a resident of this state, and all his property, real and personal, had been located within this state, as such property within this state bears to the entire estate wherever situated, provided that nothing in this clause contained shall apply to any specific bequest or devise of any property in this state."

The clear intent of this legislation, it has been determined, is to provide a mathematical formula to the estate of a non-resident decedent, which in practical application will work out a tax not on the entire estate of the decedent, but upon that portion of it within the jurisdiction, so as to practically equalize in administration the tax imposed by the same legislation upon the estates of resident decedents.

That this object may be adequately and legally attained by this legislative method is evidenced by the authorities.

The method in question doubtless had its origin in an intimation contained in the opinion of Mr. Justice Swayze in *Beers* v. *Edwards, supra,* in commenting upon the act of 1909, wherein he declared: "We do not mean to say that the legislature might not have adopted another basis for the computation of the entire tax. It might perhaps have enacted that the entire tax should be the amount to which the estate would have been subject, if the decedent had been a resident of New Jersey, and all his property had been situated here."

Referring to the same subject in the subsequent case of *Carr* v. *Edwards, supra,* in the Court of Errors and Appeals, he declared: "The object and the effect of section 12 was to equalize the rate of the transfer tax as between the estates of resident and non-resident decedents. The amount (of the tax) depends on the ratio of the New Jersey property to the entire estate wherever situated. This, however, merely affords a measure of the tax imposed; the tax is still by the very words of the section imposed upon the property located within the state."

This method of dealing with the estate of non-residents found within the state was earlier supported by the views of Mr. Justice Reed in *Tilford* v. *Dickinson, 79 N. J. L.* 302, in dealing with the legislative *modus operandi* imposed by the Tax act of 1906. This method of taxation was also dealt with by Mr. Justice Kalisch, in this court, in *Howell* v. *Edwards, supra,* and its validity was there recognized and subsequently was the subject of consideration, and was practically applied by this court in the recent opinion by Mr. Justice Kalisch in *Torrance* v. *Edwards, post p.* 507. Pursuit of the subject further from the viewpoint of legality and reasonableness under the constitutional inhibitions, of this legislative method of equalizing taxation, as between the estates of resident and non-resident decedents, might appear to be but an academic task in the light of these adjudications, but it may not be out of place to observe in passing, that the principle of this legislation has met with

the approval of the highest courts in other jurisdictions where the question has been presented for judicial determination. *Adams Express Co.* v. *Indiana,* 165 *U. S.* 255; *Adams Express Co.* v. *Ohio, Id.* 195; *Adams Express Co.* v. *Kentucky,* 166 *Id.* 171; *St. Louis and W. Railway Co.* v. *Arkansas,* 235 *Id.* 350.

The general power of the state to enact legislation of this character, and its impregnability to attack on constitutional grounds, is amply emphasized and vindicated by Mr. Justice Pitney in *St. Louis and W. Railway Co.* v. *Arkansas, supra,* wherein he declares: "Nothing in the fourteenth amendment imposes any iron-clad rule upon the states with respect to their internal taxation, or prevents them from imposing double taxation, or any other form of unequal taxation, so long as the inequality is not based upon arbitrary distinctions." There remains therefore to consider only the concrete objection presented by the prosecutor, in the form of various reasons to this method of taxation; the contention being that in the case *sub judice* its application results in inequality to this particular estate.

It must not be overlooked in any calculation, that as our legislation now stands, the non-resident decedent is accorded a favored status, since he is exempted in the succession tax from any imposition upon bonds and mortgages, commercial paper, bank deposits and debts, within this state, which taxable assets are subject to taxation as assets of a resident decedent. *Hopper* v. *Edwards, ubi supra.* Mention of this consideration is suggested to evince the fact which at once must become apparent, that instead of subjecting the non-resident's estate to an arbitrary and discriminative tax, the legislation in question, if discriminatory at all, is obviously so only in favor of the non-resident. That such legislation may eventuate differently in results in specific instances, when compared with the results attainable in the case of the resident decedent, presents no legal ground for its condemnation. The never ending aim of popular government, and the age-long dream of the political economist, have been the evolution of a golden rule productive of equality of taxation. In this

as in many other fields of human endeavor, it must be manifest that the perfect is in reality the unattainable.

That the ratio rule applied in this case may not produce absolute equality in results may be conceded, but it will answer its purposes in the complicated relationship of our state and federal life, if it be a business-like workable rule, manifestly the latest solution in the line of judicial and legislative thought upon one of the most abstruse problems of modern government.

It may well be that the tax ratio in actual application in this instance may, as exemplified by the prosecutor's method of computation, produce a result different from that which will be obtained under the method applicable to the estates of resident decedents; but as we have observed, that fact does not furnish the determining test as to the validity of this legislative scheme, nor does it prove the absence of the necessary constitutional element of equality, as that term has been defined by the adjudged cases. "It is," says the learned editor and commentator of the Cyclopedia of Law and Procedure, "a matter of common experience that absolute equality in the imposition of a tax is not attainable, nor is this the meaning of the constitutional provision. All that it requires is an aim and intention on the part of the legislature in framing the tax law to approximate to the ideal of absolute equality, as closely as the nature of the subject and the necessities of practical administration will permit. Hence the courts will not pronounce a statute invalid on this ground, unless it appears that it was framed on a plan or principle not calculated to produce equality and uniformity, or that its administration will result in such flagrant injustice as to evidence an entire disregard of the constitutional requirement." 37 *Cyc.* 736, and cases cited.

Our examination of the computation of the tax made by the comptroller, in this instance, satisfies us that it was made in accordance with the ratio provision of the act of 1914, and that it should for the reasons here presented be sustained.

The tax in question will therefore be affirmed.